IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARCELLA P. McNEIL, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV60 |
| | ) | |
| v. | ) | |
| | ) | |
| COMMAND CENTER, INC., | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

### I.  INTRODUCTION

This matter is before the Court following a bench trial on February 10, 2011.  Plaintiff Marcella P. McNeil, *pro se*, sued defendant Command Center, Inc., following an incident that occurred on June 23, 2007.[1]  Plaintiff filed a complaint, which the Court liberally construed as asserting a claim pursuant to Title VII of the Civil Rights Act for unlawful racial discrimination in the workplace.  *See* Memorandum and Order, Filing No. 7, at 3; *see also* 42 U.S.C. § 2000e-2(a)(1).  After reviewing the testimony of plaintiff, Daniel Aguilera and the exhibits, the Court finds that plaintiff has failed to establish her Title VII claim, and it will be dismissed.

---

[1] Plaintiff also sued defendant Labor Ready, but Labor Ready was dismissed from the case pursuant to the Court's April 26, 2010, order, because plaintiff failed to properly serve Labor Ready in accordance with Federal Rule of Civil Procedure 4(h) (Memorandum and Order, Filing No. 40).

## II.  FINDINGS OF FACT

1) Defendant is a corporation authorized to do business in Nebraska.  Defendant maintains an office in a shopping center in Omaha, Nebraska, located at 335 North 76th Street.  Defendant principally engages in the business of providing temporary workers for on-demand jobs, such as construction, hospitality, and food services.  Defendant typically operated its business by sending workers to job sites, having the workers return to defendant's office upon completion of the work, and paying the workers the same day for the work they performed.  Defendant employs people of both sexes and of many races.

2) Plaintiff is an African-American woman residing in Omaha, Nebraska, and was an employee of defendant until June 23, 2007.  In connection with her employment, plaintiff signed an orientation form when she was hired in which she acknowledged that defendant was "a drug-free employer and that [she] may be asked to submit to drug testing."  Plaintiff also agreed that a positive drug test would result in her termination from defendant (Exhibit 13).

3) On June 23, 2007, in connection with a work assignment from defendant, plaintiff worked approximately eight and one-half hours at a hotel in western Omaha in the laundry room.  Upon completing her duties at the hotel at around 5:00

p.m., plaintiff called Daniel Aguilera, the branch manager for defendant's office located on North 76th Street. Plaintiff informed Aguilera that she would like to turn in her work ticket for the hotel job that evening and receive her paycheck for the work. At that time, defendant's office normally closed at 5:30 p.m., but because defendant was staffing clean-up workers for the College World Series that evening, Aguilera told plaintiff the office would be open at approximately 8:45 p.m., and that she could turn in her work ticket and receive payment for her work at that time.

4) However, plaintiff traveled directly to defendant's office, arriving at around 6:00 p.m. At about 6:15 p.m., Aguilera arrived at the office. Aguilera had come to the office because an unexpected work request had arisen, and he needed to find two workers to satisfy the request. When he arrived at the office, Aguilera found plaintiff waiting there with some food she had purchased from a nearby restaurant. Plaintiff asked Aguilera if she could come into the office to receive payment for her work. Aguilera told plaintiff that the office was closed and that she would have to wait until later that evening when the office was open to have her payment processed. Because of the day's heat, plaintiff asked if she could come inside the office and eat her food. At first Aguilera declined, but eventually he allowed plaintiff to enter the office to eat her meal.

5)   Upon entering the office, plaintiff sat down near the front door and began eating while Aguilera went about his work of staffing the unexpected work request.  Soon thereafter, plaintiff renewed her request for Aguilera to process her payment request, which Aguilera again declined to do.  Plaintiff and Aguilera then engaged in a heated argument, which resulted in plaintiff's meal being spilled.  Aguilera went to the office's front door, opened it, and ordered plaintiff to leave the premises.  Plaintiff left the office, but remained outside the building near the front door.

6)   About fifteen minutes later, two workers showed up at defendant's office to obtain work assignments for the evening. Both workers were Caucasian men.  Intending to have the men work on the unexpected work request, Aguilera opened the office front door and asked them to come in.  Upon the opening of the door, plaintiff attempted to reenter the office.  Aguilera refused to allow plaintiff to reenter and began closing the door to block her entrance.  The plaintiff, in an effort to prevent the door from closing, stuck her foot in, resulting in an injury to her foot.  Plaintiff was subsequently taken to the hospital.

7)   At the hospital, plaintiff underwent treatment for her foot injury.  Because plaintiff's injury arguably occurred in the course of plaintiff's employment, she was requested to

undergo a drug test, pursuant to company policy. The drug test showed positive for cannabis.

8) In connection with her injury, and with the assistance of counsel, plaintiff filed a worker's compensation claim. Plaintiff and defendant reached an agreement for a final lump sum settlement on March 10, 2008 (Exhibit 10). In paragraph 10 of the settlement agreement, the parties acknowledged that plaintiff was asked to take a drug test following her injury, she failed the test, and as a result was not eligible to work for defendant pursuant to the defendant's employment policy.

9) The plaintiff presented no evidence that non-African American employees were treated any differently than she was.

10) After completion of the worker's compensation matter, plaintiff filed a Charge of Discrimination on March 25, 2008, alleging race discrimination (Exhibit 2). After reviewing plaintiff's charge, the Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights letter to plaintiff on December 12, 2008 (Exhibit 3). Plaintiff, thereafter, timely filed this action *pro se*.

### III. CONCLUSIONS OF LAW

The Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, and venue is proper, pursuant to 28 U.S.C.

§ 1391.  The Court has liberally construed plaintiff's complaint as alleging a claim under Title VII of the Civil Rights Act for racial discrimination.  Under section 703(a)(1), Title VII, of the Civil Rights Act, it is unlawful for an employer "to . . . discharge any individual . . . because of such individual's race. . . ."  42 U.S.C. § 2000e-2(a)(1).

In order to establish a claim of racial discrimination, plaintiff must either (1) "present admissible evidence directly indicating unlawful discrimination," or (2) "present evidence creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792, 802-04 (1973)]." *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009) (internal quotation marks omitted).  Plaintiff has not produced any evidence directly indicating defendants engaged in unlawful discrimination when it discharged her.  Therefore, the Court will utilize the *McDonnell Douglas* framework to analyze whether defendant's termination was unlawfully racially motivated.

The *McDonnell Douglas* framework involves three steps.  First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  Plaintiff must show: (A) that she belongs to a protected class (e.g., a racial minority); (B) that she was meeting her employer's legitimate job expectations; (C) that she suffered an adverse

employment action; and (D) that similarly situated employees outside the protected class were treated differently. *Humphries*, 580 F.3d at 692. Second, if plaintiff fulfills her burden to establish a *prima facie* case of discrimination, the burden shifts to defendant "to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action." *Id.* at 692-93 (internal quotation marks omitted). Finally, if defendant makes such a showing, the burden reverts back to plaintiff to establish that defendant's proffered explanation is a pretext. *Id.* at 693. If plaintiff cannot show the proffered explanation is a pretext, then her claim under Title VII must fail.

With regard to whether plaintiff has established a *prima facie* case of discrimination, plaintiff, as an African-American, belongs to a protected class. In addition, the final settlement agreement in plaintiff's worker's compensation proceeding, which stated plaintiff was not eligible for future employment with defendant, demonstrates plaintiff suffered an adverse employment action. Whether plaintiff was meeting defendant's legitimate job expectations and whether defendant treated similarly situated employees outside the protected class differently from plaintiff are debatable issues. Although debatable whether plaintiff has established these elements of the *prima facie* case for discrimination, the Court need not resolve these issues because plaintiff's discrimination claim fails under

the remaining steps of the *McDonnell Douglas* framework.  See *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005) (assuming without deciding the plaintiff-employee had established the *prima facie* case for discrimination when the defendant-employer had offered a legitimate, non-discriminatory rationale for its actions).

Defendant has articulated a legitimate, non-discriminatory reason for the alleged discriminatory action, i.e., plaintiff's positive drug test.  As evidenced by the orientation form plaintiff signed when she started working for defendant, defendant maintained a policy of being a drug-free company.  When plaintiff tested positive for cannabis, plaintiff became ineligible for employment with defendant under this company policy.  A violation of company policy can be a legitimate, non-discriminatory reason for terminating an employee.  *See EEOC v. Trans State Airlines, Inc.*, 462 F.3d 987 (8th Cir. 2006) (recognizing an airline's termination of a pilot who entered a bar while in uniform in violation of company policy constituted a legitimate, non-discriminatory explanation for his termination).

Having articulated a legitimate, non-discriminatory reason for the alleged discriminatory action, the burden shifts back to plaintiff to establish defendant's reason is merely a pretext.  *Humphries*, 580 F.3d at 693.  Pretext may be shown by

-8-

demonstrating that an employer did not follow its own policies. *Arnold v. Nursing & Rehab. Ctr. at Good Shepard, LLC*, 471 F.3d 843, 847 (8th Cir. 2006). There is no evidence in the record indicating defendant did not follow its policy of terminating employees known to be using drugs. Nor is there any other evidence in the record that would otherwise indicate a pretext.

Accordingly, plaintiff has failed to establish her dismissal by defendant constitutes unlawful race discrimination under § 703(a)(1) of the Civil Rights Act. A separate order and judgment dismissing plaintiff's claim of race discrimination will be entered in accordance with this memorandum opinion.

DATED this 14th day of February, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court